UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| JESUS AGUILAR, TDCJ #01570892, | § § § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. 3:16-CV-327 |
| | § | |
| LORIE DAVIS, Director, Texas Department of Criminal Justice, Correctional Institutions Division, | § § § § | |
| Respondent. | § § | |

## MEMORANDUM OPINION AND ORDER

State inmate Jesus Aguilar (TDCJ #01570892) has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 (Dkt. 1). After reviewing all of the pleadings, the record, and the applicable law under Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts, the Court concludes that Aguilar's petition must be dismissed as time-barred.

**I.     BACKGROUND**

On April 9, 2009, Aguilar pled guilty to intoxication manslaughter and intoxication assault and was sentenced to concurrent prison terms of 30 and 10 years. *See Aguilar v. State*, Nos. 14-11-00306-CR, 14-11-00307-CR, 14-11-00308-CR, 2011 WL 2976828, at *1 (Tex. App.—Houston [14th Dist.] July 21, 2011, no pet.). He did not file a direct appeal.

Two years later, Aguilar filed a state habeas petition, which the Texas Court of Criminal Appeals ("TCCA") denied without opinion on June 1, 2011. *See* Texas Court of

Criminal Appeals Case Number WR-75,661-01. Two years after that, the United States Supreme Court issued its opinion in *Missouri v. McNeely*, 133 S. Ct. 1552 (2013), in which the Supreme Court held that, "in drunk-driving investigations, the natural dissipation of alcohol in the bloodstream does not constitute an exigency in every case sufficient to justify conducting a blood test without a warrant." *Id.* at 1568. In January of 2016, Aguilar filed another state habeas petition seeking retroactive application of the *McNeely* holding, which the TCCA denied on August 24, 2016 (Dkt. 1 at p. 9). *See* Texas Court of Criminal Appeals Case Number WR-75,661-02.

Aguilar filed this federal habeas petition on November 9, 2016 (Dkt. 1 at p. 10).[1] As he did in the state courts, he seeks retroactive application of *McNeely* (Dkt. 1 at p. 6).

## II. THE ONE-YEAR STATUTE OF LIMITATIONS

This federal habeas petition is subject to the one-year limitations period found in 28 U.S.C. § 2244(d). *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998). Section 2244(d) provides as follows:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws

---

[1] This petition is deemed filed on the date on which Aguilar deposited it into the prison mailing system. *Richards v. Thaler*, 710 F.3d 573, 576 (5th Cir. 2013). The Court is assuming that Aguilar deposited this petition into the prison mailing system on the date on which he signed it.

of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Essentially, subsections (B), (C), and (D) outline exceptions to the general rule, set forth in subsection (A), that a federal habeas petition must be filed within one year after the petitioner's conviction becomes final. *Flanagan*, 154 F.3d at 198. Section (d)(2) tolls limitations during the pendency of a properly filed state habeas petition. *Id.*

Although the statute of limitations is an affirmative defense, district courts may raise the defense *sua sponte* and dismiss a petition prior to any answer if it "plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court[.]" *Kiser v. Johnson*, 163 F.3d 326, 328 (5th Cir. 1999) (quoting 28 U.S.C. foll. § 2254 Rule 4). A district court may dismiss a petition as untimely on its own initiative where it gives fair notice to the petitioner and an opportunity to respond. *Day v. McDonough*, 547 U.S. 198, 209–10 (2006).

### a. The *McNeely* holding is not retroactively applicable.

Under Texas law, Aguilar waived his right to appeal when he pled guilty. *See* TEX. R. APP. P. 25.2(a)(2). That being the case, his conviction became final, and the federal habeas statute of limitations began to run, on April 9, 2009, the date of judgment. *See Butler v. Cain*, 533 F.3d 314, 317 (5th Cir. 2008) (holding that if the defendant does not pursue relief on direct appeal through his state's highest court, "the conviction becomes final when the time for seeking further direct review in the state court expires"). Even if Aguilar for some reason did have a right to appeal, he did not file a notice of appeal within 30 days of the imposition of his sentence as required by the Texas Rules of Appellate Procedure, so his conviction became final on May 9, 2009. *See* TEX. R. APP. P. 26.2(a)(1); *Butler*, 533 F.3d at 317. Limitations therefore ran on either April 9, 2010 or May 9, 2010; and both dates are approximately six and a half years before the filing date of Aguilar's federal habeas petition. Aguilar's state habeas petitions—the first of which was filed in 2011—did not toll limitations because he filed them after the limitations period had expired. *Richards v. Thaler*, 710 F.3d 573, 576 (5th Cir. 2013).

Aguilar clearly understands the foregoing analysis but argues that a different trigger date applies; he contends that, under 28 U.S.C. § 2244(d)(1)(C), limitations began to run on the date of the *McNeely* decision (Dkt. 1 at p. 9). *See* 28 U.S.C. § 2244(d)(1)(C). The Court disagrees. When the standard set out by the Supreme Court for determining retroactivity is applied, it is clear that the *McNeely* holding was not made retroactively applicable to cases on collateral review. First, *McNeely* does not explicitly state that it is to be applied retroactively. *See Tyler v. Cain*, 533 U.S. 656, 663 (2001)

("We thus conclude that a new rule is not 'made retroactive to cases on collateral review' unless the Supreme Court holds it to be retroactive."). Second, the *McNeely* opinion does not meet either exception to the *Teague* bar. *See id.* at 664–67 & n.7; *see also id.* at 668–70 (O'Connor, J., concurring).

*Teague v. Lane*, 489 U.S. 288 (1989), bars retroactive application of new rules of Constitutional criminal procedure. *Beard v. Banks*, 542 U.S. 406, 416 (2004). In order for a new Constitutional rule to apply retroactively to cases that became final before the rule's announcement, the rule must fit one of the two exceptions also set forth in *Teague*. *In re Williams*, 806 F.3d 322, 325 (5th Cir. 2015). The first exception, which is not even arguably applicable to the *McNeely* rule, includes new substantive rules forbidding criminal punishment of certain primary conduct or prohibiting certain categories of punishment for classes of defendants on account of status or offense. *Id.* The second exception, which Aguilar is presumably shooting for, covers "a small set of watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding . . . or implicit in the concept of ordered liberty." *Id.* (quotation marks and footnotes omitted). The Court notes that the second exception is, by the Supreme Court's design, extremely narrow. As the Supreme Court has put it, "any qualifying rule would be so central to an accurate determination of innocence or guilt that it is unlikely that many such components of basic due process have yet to emerge[.]" *Beard*, 542 U.S. at 417 (quotation marks and brackets omitted). The Supreme Court has, in fact, never held that a new rule fell under the second *Teague* exception; and it has only

given one example of a rule that even "might" do so: the right to counsel announced in *Gideon v. Wainwright* in 1963. *Id.*; *see also Williams*, 806 F.3d at 325.

Fourth Amendment jurisprudence seems particularly unlikely ever to produce a "watershed rule" within the meaning of *Teague*. In *Stone v. Powell*, 428 U.S. 465, 494–95 (1976), the Supreme Court held that a federal court may not grant habeas relief to a state prisoner on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial, unless the prisoner was denied a full and fair opportunity to litigate his Fourth Amendment claim in the state courts. The *Stone* Court grounded this policy decision on its telling description of the Fourth Amendment exclusionary rule as a "diver[sion] from the ultimate question of guilt or innocence that . . . deflects the truthfinding process, and often frees the guilty." *Id.* at 490. Since the *Teague* "watershed rule" exception only concerns itself with rules that are "central to an accurate determination of innocence or guilt"—*Beard*, 542 U.S. at 417 (quotation marks omitted)—it is hard to see how the exception would ever embrace any expansion of a rule that the Supreme Court considers a "diversion" from that very determination. The Court therefore holds, as has the Tenth Circuit, that *McNeely* was not made retroactively applicable to cases on collateral review. *See Sanders v. Dowling*, 594 Fed. App'x 501, 503 (10th Cir. 2014). 28 U.S.C. § 2244(d)(1)(C) does not provide the limitations trigger date for any of Aguilar's claims.

### b. Aguilar's actual innocence argument fails.

Aguilar also claims that he is actually innocent, though his argument betrays a misunderstanding of what "actual innocence" means in this context.

A prisoner who has filed an untimely federal habeas application can overcome the one-year statute of limitations with a convincing showing of "actual innocence." *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013). The actual-innocence exception described in *McQuiggin* is grounded in the miscarriage-of-justice exception—*Id.* at 1932—which is a narrow exception applicable only in extraordinary cases. *Calderon v. Thompson*, 523 U.S. 538, 559 (1998). Thus, tenable actual-innocence claims are "rare[.]" *McQuiggin*, 133 S. Ct. at 1928. "The gateway should open only when a petition presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Id.* at 1936 (quotation marks omitted; quoting *Schlup v. Delo*, 115 S. Ct. 851, 861 (1995)).

For the purposes of the miscarriage-of-justice analysis, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). As the Fifth Circuit has further explained, "actual innocence" means "factual" as opposed to "legal" innocence, with "legal" innocence meaning that a constitutional violation by itself requires reversal and "factual" innocence meaning that the person actually did not commit the crime. *Johnson v. Hargett*, 978 F.2d 855, 859–60 (5th Cir. 1992); *see also Calderon*, 523 U.S. at 559 ("The miscarriage of justice

exception is concerned with actual as compared to legal innocence.") (internal brackets and quotation marks omitted).

Aguilar argues that, under *McNeely*, test results obtained by way of a nonconsensual blood draw would not have been available to the prosecution in his case, so he would not have pled guilty and would not have been convicted had the case gone to trial (Dkt. 8 at p. 5). Even if all of that were true (which the Court expressly does not hold), such claims are not covered by *McQuiggin*. The *McQuiggin* exception only "applies to a severely confined category: cases in which *new evidence shows* it is more likely than not that no reasonable juror would have convicted the petitioner." *Id.* at 1933 (quotation marks and brackets omitted; italics added). Contrary to Aguilar's claim, the possibility—or even the fact—that a change in the law rendered key inculpatory evidence inadmissible does not by itself constitute new exculpatory evidence; to hold otherwise would be to collapse the distinction between factual innocence and mere legal insufficiency. *See Schlup*, 115 S. Ct. at 865 ("To be credible, such a claim [actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial."); *see also, e.g., Pena v. Ryan*, No. CV-13-02227, 2015 WL 4594061, at *4 (D. Ariz. July 30, 2015) ("While many of Petitioner's arguments may challenge the constitutional adequacy of the procedures that led to his convictions and the inherent fairness of those convictions, these arguments do not point to evidence of actual, factual innocence."). In the end, Aguilar's

"actual innocence" argument is simply another attempt to get this Court to apply *McNeely* retroactively, something the Court cannot do.

The statute of limitations barred this petition on May 9, 2010, at the latest. No special circumstances exist, and no tolling doctrines apply. The Court will dismiss Aguilar's federal habeas petition.

## III. <u>CERTIFICATE OF APPEALABILITY</u>

The federal habeas corpus petition filed in this case is governed by the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), codified as amended at 28 U.S.C. § 2253. Therefore, a certificate of appealability is required before an appeal may proceed. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see also Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir. 1997) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability).

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Under the controlling standard, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336. Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable

whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). After careful review of the pleadings and the applicable law, the Court concludes that reasonable jurists would not find its assessment and ruling debatable or wrong. Because the petitioner does not otherwise allege facts showing that his claims could be resolved in a different manner, a certificate of appealability will not issue in this case.

## IV. CONCLUSION

Based on the foregoing, the Court **ORDERS** as follows:

1. The habeas corpus petition is **DENIED**, and this case is **DISMISSED** with prejudice.

2. A certificate of appealability is **DENIED**.

The Clerk shall provide a copy of this order to the parties.

SIGNED at Galveston, Texas, on August 14, 2017.

GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE